JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Frank D.. Concio | CSX Intermodal Terminals Inc and Richard Dejesus Jimenez Munoz |

**(b)** County of Residence of First Listed Plaintiff   Camden
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Philadelphia
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Law Offices Bernard M, Gross PC, 1500 JFK Blvd., Suite 1820 Philadelphia PA 19102

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

X 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | X 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | X 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| | X 350 Motor Vehicle | | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

X 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity)

Brief description of cause:
rear end motor vehicle accident WB Walt Whitman Bridge

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: X Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FRANK D. CONCIO** | : | |
| **4115 Reamer Drive** | : | **CIVIL ACTION NO:** |
| **Barrington, NJ 08007** | : | |
| | : | |
| **v.** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **CSX INTERMODAL TERMINALS, INC.** | : | |
| **3400 S. Christopher Colombus Blvd.** | : | |
| **Philadelphia, PA 19148** | : | |
| **and** | : | |
| **RICHARD DEJESUS JIMENEZ MUNOZ** | : | |
| **2125 Wakeling Street** | : | |
| **Philadelphia, PA 19124** | : | |

## COMPLAINT

1.      The Plaintiff, Frank Concio, is an adult individual, residing at 4115 Reamer Drive, Barrington, N.J. 08007, and was the owner and operator of a 1990 black Toyota pick up truck that was involved in the hereinafter referenced motor vehicle-tractor trailer collision.

2.      The Defendant, Richard Dejesus Jimenez-Munoz, is an adult individual, residing and/or maintaining a place of business and/or business office at 2125 Wakeling Street, Philadelphia, PA 19124, and was, at all times material, the operator and owner of a 2004 white Freightliner tractor trailer vehicle that was involved in the hereinafter referenced motor vehicle-tractor trailer collision.

3.      The Defendant, CSX Intermodal Terminals, Inc., is a for profit corporation that operates intermodal terminals nationwide, providing trans-loading services, and maintains a regional terminal serving domestic and international intermodal freight at 3400 S. Christopher Columbus Blvd., Philadelphia, PA 19148.

4.      At all times relevant hereto, Defendants and each of them, acted by and through their agents, ostensible agents, servants, workers, residents, and/or employees who were then and there acting within the scope of their employment and/or by and through other persons for whose acts or omissions they are responsible.

5.      Jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. Sec. 1332(a); the matter in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest and costs. Plaintiff, Frank Concio is a citizen of New Jersey. Defendant, Richard Dejesus Jimenez-Munoz is a citizen of the Commonwealth of

Pennsylvania and Defendant, CSX Intermodal Terminals, Inc. is a Florida Corporation, having it's corporate offices located in Jacksonville, Florida, and is a citizen of Florida. There is complete diversity in this matter.

6.     On or about Friday, March 11, 2016, at approximately 9:10 a.m., plaintiff, Frank Concio, was lawfully and cautiously operating his Toyota pick up truck on the Walt Whitman Bridge in a westbound direction, approaching the City and County of Philadelphia, when suddenly and without warning the vehicle he was operating was struck in the rear by the tractor trailer vehicle operated by Defendant, Richard Dejesus Jimenez-Munoz, causing Plaintiff's vehicle to spin out of control on the bridge.

7.     This motor vehicle-tractor trailer accident resulted solely from the negligence and carelessness of Defendants herein, and was not due in any manner whatsoever to any act or failure to act on the part of the Plaintiff.

### FIRST COUNT

### PLAINTIFF, FRANK CONCIO v. DEFENDANT, RICHARD DEJESUS JIMENEZ-MUNOZ

8.     Plaintiff, Frank Concio, incorporates the preceding paragraphs by reference as though the same were more fully set forth herein again at length.

9.     The aforesaid motor vehicle-tractor trailer collision was caused by the carelessness, recklessness, and negligence of the Defendant, Richard Dejesus Jimenez-Munoz and consisted of the following:

(a)     Operation of Defendant's tractor trailer at a high and excessive rate of speed under the circumstances;

(b)     Failure to maintain and have Defendant's tractor trailer under proper and adequate control under the circumstances;

(c)     Engaging in an improper, imprudent and/or illegal lane change under the circumstances;

(d)     Failure to have due regard for the point and position of Plaintiff's motor vehicle;

(e)     Failing to maintain a proper lookout;

(f)     Failing to take proper evasive action in order to avoid an impact with Plaintiff's vehicle;

2

(g)     Failing to take appropriate measures consistent with Local, State and Federal Regulations governing the operation of tractor trailer vehicles to ensure the safe operation of the tractor trailer at the time of the accident;

(h)     Violations of the Ordinances of the Delaware River Port Authority, City of Philadelphia, Commonwealth of Pennsylvania and Federal Motor Carrier Safety Regulations governing the operation of said motor vehicle.

10.     As a result of this accident, the Plaintiff, Frank Concio, suffered injuries which are, or may be serious and permanent, including, but not limited to, significant, acute, traumatic injury to his left shoulder and left lower back, left lumbosacrial sacroiliitis and myofascitis as well as exacerbation of pre-existing asymptomatic conditions involving Plaintiff's back.

11.     As a further result of this accident, Plaintiff has been obliged to receive and undergo reasonable and necessary medical treatment and rehabilitative services as described under the applicable law for the injuries suffered and to incur various expenses for said treatment and services which are or may be in excess of the applicable first party medical benefit limits under the applicable statutes.

12.     As a further result of this accident, Plaintiff has been obligated to receive and undergo reasonable and necessary medical treatment and rehabilitative services for the injuries he has suffered, and to incur various expenses for said treatment and services, and he may incur various reasonable and necessary future medical expenses from the injuries sustained, and the Defendant is liable for the same.

13.     As a further result of this accident, Plaintiff has or may suffer loss of earnings and/or impairment of his earning capacity and power.

14.     As a further result of his injuries, Plaintiff has or may sustain permanent diminution in his ability to enjoy life's pleasures.

15.     As a further result of the aforementioned accident, Plaintiff's 1999 Toyota pickup truck sustained physical property damage and Plaintiff has or may hereafter incur property damage and/or rental expenses in connection with the repair and/or replacement of said vehicle.

16.     As a further result of the aforementioned accident, Plaintiff has suffered severe physical pain, aches, mental anguish, humiliation, inconveniences, and loss of life's pleasures, and he may continue to suffer the same for an indefinite time in the future.

17.     As a direct result of the aforementioned accident, Plaintiff has been unable to attend to his daily chores, duties and occupations and may be unable to do so for an

3

indefinite period.

**WHEREFORE**, Plaintiff, Frank Concio, demands judgment against the Defendant, Richard Dejesus Jimenez-Munoz in a sum in excess of Seventy Five Thousand Dollars ($75,000.00), plus interest, costs, and other relief which the Court may deem appropriate.

## SECOND COUNT

### PLAINTIFF, FRANK CONCIO v. DEFENDANT, CSX INTERMODAL TERMINALS, INC.

18.    Plaintiff, Frank Concio, hereby incorporates by reference the preceding paragraphs as though the same were more fully set forth herein again at length.

19.    At all times material herein, Defendant, CSX Intermodal Terminals, Inc. (Hereinafter referred to as "CSX Intermodal"), was a party to a Contractor Operating And Lease Agreement with Defendant, Richard Dejesus Jimenez-Munoz, pursuant to which CSX Intermodal, as carrier, was obligated to comply with carrier safety rules, regulations and obligations as more particularly referenced in the aforementioned Agreement, including obligations under applicable federal motor carrier safety regulations, with regard to the safe operation, inspection, maintenance, and control of the tractor trailer operated by Defendant, Jimenez-Munoz, at the time of this accident.  A true and correct copy of the aforementioned Contractor Operating and Lease Agreement is attached hereto as Exhibit "A". The aforesaid motor vehicle-tractor trailer collision was caused by the carelessness, recklessness and negligence of Defendant, CSX Intermodal, and consisted of the following:

  (a)    Violation of carrier safety rules as referenced in the Contractor Operating And Lease Agreement entered into between CSX Intermodal and Defendant, Jimenez-Munoz;

  (b)    Failure to conduct timely and proper inspection of the tractor trailer vehicle operated by Defendant, Jimenez-Munoz, which inspection could have prevented the accident;

  (c)    Failure to act in accordance with CSX Intermodal's regulatory obligations under 49 C.F.R. Part 391 to ensure that the operator of the tractor trailer was safe and properly qualified in operating the aforesaid tractor trailer in compliance with all applicable federal motor carrier safety regulations;

  (d)    Otherwise violating the ordinances of the Delaware River Port Authority, City of Philadelphia, Commonwealth of Pennsylvania and all applicable federal motor carrier safety regulations.

20.     As a result of this accident, the Plaintiff, Frank Concio, suffered injuries which are, or may be serious and permanent, including, but not limited to, significant, acute, traumatic injury to his left shoulder and left lower back, including left lumbo sacral sacroiliitis and myofascitis as well as exacerbation of pre-existing asymptomatic conditions involving Plaintiff's back.

21.     As a further result of this accident, Plaintiff has been obliged to receive and undergo reasonable and necessary medical treatment and rehabilitative services as described under the applicable law for the injuries suffered and to incur various expenses for said treatment and services which are or may be in excess of the applicable first party medical benefit limits under the applicable statutes.

22.     As a further result of this accident, Plaintiff has been obligated to receive and undergo reasonable and necessary medical treatment and rehabilitative services for the injuries he has suffered, and to incur various expenses for said treatment and services, and he may incur various reasonable and  necessary future medical expenses from the injuries sustained, and the Defendant is liable for the same.

23.     As a further result of this accident, Plaintiff has or may suffer loss of earnings and/or impairment of his earning capacity and power.

24.     As a further result of his injuries, Plaintiff has or may sustain permanent diminution in his ability to enjoy life's pleasures.

25.     As a further result of the aforementioned accident, Plaintiff's 1999 Toyota pickup truck sustained physical property damage and Plaintiff has or may hereafter incur property damage and/or rental expenses in connection with the repair and/or replacement of said vehicle.

26.     As a further result of the aforementioned accident, Plaintiff has suffered severe physical pain, aches, mental anguish, humiliation, inconveniences, and loss of life's pleasures, and he may continue to suffer the same for an indefinite time in the future.

27.     As a direct result of the aforementioned accident, Plaintiff has been unable to attend to his daily chores, duties and occupations and may be unable to do so for an indefinite period.

**WHEREFORE**, Plaintiff, Frank Concio, demands judgment against the Defendant, Richard Dejesus Jimenez-Munoz in a sum in excess of Seventy Five Thousand Dollars ($75,000.00), plus interest, costs, and other relief which the Court may deem appropriate.

## THIRD COUNT

## PLAINTIFF, FRANK CONCIO v. DEFENDANT, CSX INTERMODAL TERMINALS, INC.

28.     Plaintiff, Frank Concio, hereby incorporates by reference the preceding paragraphs as though the same were more fully setforth herein again at length.

29.     The negligence and carelessness of Defendant, CSX Intermodal, by and through its contractual relationship to and/or with Defendant, Jimenez-Munoz, included but was not limited to:

(a)     Failing to properly train its contractor drivers including, Defendant, Jimenez-Munoz;

(b)     Negligently and carelessly failing to properly investigate the background and driving of Defendant, Jimenez-Munoz;

(c)     Negligently and carelessly failing to inspect the condition of the tractor trailer motor vehicle driven by Defendant, Jimenez-Munoz;

(d)     Failing to protect and warn Plaintiff of the negligent and careless driving of defendant, Jimenez-Munoz;

(e)     Failing to properly supervise its contractor driver, Jimenez-Munoz, in accordance with the terms of the applicable Contractor Operating And Lease Agreement;

(f)     Violations of its regulatory obligations pursuant to all applicable federal motor carrier safety regulations.

30.     As a result of this accident, the Plaintiff, Frank Concio, suffered injuries which are, or may be serious and permanent, including, but not limited to, significant, acute, traumatic injury to his left shoulder and left lower back, including left lumbo sacral sacroiliitis and myofascitis as well as exacerbation of pre-existing asymptomatic conditions involving Plaintiff's back.

31.     As a further result of this accident, Plaintiff has been obliged to receive and undergo reasonable and necessary medical treatment and rehabilitative services as described under the applicable law for the injuries suffered and to incur various expenses for said treatment and services which are or may be in excess of the applicable first party medical benefit limits under the applicable statutes.

32.     As a further result of this accident, Plaintiff has been obligated to receive and undergo reasonable and necessary medical treatment and rehabilitative services for the injuries he has suffered, and to incur various expenses for said treatment and services, and he may incur various reasonable and  necessary future medical expenses from the injuries sustained, and the defendant is liable for the same.

33.     As a further result of this accident, Plaintiff has or may suffer loss of earnings and/or impairment of his earning capacity and power.

34.     As a further result of his injuries, Plaintiff has or may sustain permanent diminution in his ability to enjoy life's pleasures.

35.     As a further result of the aforementioned accident, Plaintiff's 1999 Toyota pickup truck sustained physical property damage and Plaintiff has or may hereafter incur property damage and/or rental expenses in connection with the repair and/or replacement of said vehicle.

36.     As a further result of the aforementioned accident, Plaintiff has suffered severe physical pain, aches, mental anguish, humiliation, inconveniences, and loss of life's pleasures, and he may continue to suffer the same for an indefinite time in the future.

37.     As a direct result of the aforementioned accident, Plaintiff has been unable to attend to his daily chores, duties and occupations and may be unable to do so for an indefinite period.

**WHEREFORE**, Plaintiff, Frank Concio, demands judgment against the Defendant, Richard Dejesus Jimenez-Munoz in a sum in excess of Seventy Five Thousand Dollars ($75,000.00), plus interest, costs, and other relief which the Court may deem appropriate.

> **LAW OFFICES**
> **BERNARD M. GROSS, P.C.**
> **BY:**
>
> **BERNARD M. GROSS**
> **Attorney I.D.   02571**
> **Two Penn Center**
> **1500 JFK Blvd., Suite 1820**
> **Philadelphia, PA  19102**
> **Phone:  (215) 561-3600**
> **Fax: (215) 561-3000**
> **Attorney for Plaintiff**

7

# EXHIBIT "A"

*1 3 2 8 9 - 3 1 9 3 - 0 0 0 0 2 5 *

CONTRACTOR OPERATING AND LEASE AGREEMENT

This AGREEMENT made this _____8th_____ day of ___October___

20 13 between CSX Intermodal Terminals, Inc., with offices located at 550 Water Street Jacksonville, Fl. 32202, ("Carrier"), and

Richard D. Jimenez ("Contractor") whose address is 4427 H St Philadelphia, PA 19124

Contractor's FEIN or Social Security Number is as follows: █████████

WITNESSETH.

WHEREAS, Carrier, an Interstate For Hire Motor Carrier, operating under authority granted by the Department of Transportation, Federal Motor Carrier Safety Administration ("FMCSA") under USDOT number 185796, wishes to contract for the use of a certain vehicle with driver from Contractor; and

WHEREAS, Contractor owns, or has exclusive use, possession and control of a certain vehicle or vehicles more fully described in Exhibit A attached hereto (the "Vehicle") and is authorized to contract the Vehicle and, in exchange for compensation, desires to grant Carrier the use of the Vehicle(s) with driver(s) for use in Carrier's operations; and

WHEREAS, Carrier and Contractor desire to enter into an agreement to carry out the foregoing.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the parties mutually agree as follows:

**1. TERM.** The term of this Agreement shall be for a period of thirty (30) days from execution of the Receipt of Possession of Vehicle(s) included in Exhibit A attached hereto (the "Term"). The Term of the Agreement shall thereafter automatically renew for successive thirty (30) day periods, unless otherwise terminated pursuant to Section 14 hereof.

**2. INDEPENDENT CONTRACTOR RELATIONSHIP OF PARTIES.** The parties intend to create a principal-independent contractor relationship by this Agreement and not an employer-employee relationship. Neither the Contractor nor its employees or agents are to be considered employees of Carrier at any time, under any circumstances, or for any purpose. Neither party is the agent of the other and neither party shall have the right to bind the other by contract or otherwise, except as otherwise herein specifically provided. Carrier shall have no right to control and shall not control the manner or proscribe the method of carrying out the services performed by Contractor. Contractor shall be responsible for all taxes owed by itself and its employees described in Section 5(D) hereof.

**3. COMPLIANCE WITH FMCSA REGULATIONS.** The performance of this Agreement and the relationship of the parties hereunder shall be in accordance with the requirements of the FMCSA regulations found at 49 CFR Part 350 *et seq.*, and as modified from time to time. Contractor, as operator of the Vehicle, recognizes that the business of providing motor carrier transportation services to the public is subject to regulation by the United States government acting through the Department of Transportation, in particular, the FMCSA (49 CFR Parts 383, 390-397 & 399 of the Federal Motor Carrier Safety Regulations) and by various State and Local governments and Contractor agrees to maintain compliance with these regulations. In accordance with 49 CFR 376.12(c)(1) Carrier shall assume complete responsibility for the operation of the Vehicle for the duration of the lease.

**4. SERVICES.**

A. Contractor's Transportation Services. For all shipments that Carrier from time to time makes available to Contractor, and Contractor chooses to accept in its sole discretion, Contractor shall furnish all transportation, loading and unloading, and other services (the "Services") necessary in connection with the accepted shipment. Contractor shall have the right, at its discretion, to accept or decline to transport any shipment tendered to it by Carrier, provided, however, that once a shipment is accepted by Contractor, the work shall be performed in accordance with the terms of this Agreement and in a manner that reasonably ensures continued satisfaction of Carrier's customers.

1 of 18

(CP) Carrier        (RJ) Contractor

 OCT 1 1 2013

090345

B. No minimum tender. Nothing in this Agreement is to be construed as an agreement by Carrier to furnish to Contractor any minimum number of shipments, shipments at any particular time, shipments to any particular place, or as a guarantee of any minimum payment during the term of this Agreement.

C. No Requirement to Purchase from Carrier. Contractor is not required to purchase or rent any products, equipment or services from Carrier as a condition of this Agreement.

## 5. CONTRACTOR'S PERSONNEL AND VEHICLES.

A. Contractor to Supply Necessary Personnel. Contractor shall furnish, at its own discretion, selection and expense, all drivers, maintenance personnel, employees, agents, subcontractors, and other personnel (each a "Contractor Representative") required to operate each Vehicle, including pick-up and delivery of shipments in the performance of this Agreement.

B. Contractor to Direct and Control Personnel. Contractor shall be solely responsible for the direction and control of the Contractor Representatives, if any, performing Services hereunder, including their hiring, supervision and direction, wages, hours and working conditions and the handling of grievances. Contractor shall determine the method, means and manner of the performance of all work by any Contractor Representative. Carrier shall neither have nor exercise disciplinary authority or control of the Contractor Representatives and shall have no authority to supervise or direct Contractor Representatives in their performance or their selection.

C. Qualification of Personnel and Vehicles. Contractor shall provide properly qualified, disciplined, supervised and supported Contractor Representatives in performing Services hereunder. In signing this Agreement, Contractor certifies that the Contractor Representatives and Vehicles it utilizes in its performance hereunder meet all industry and regulatory standards and qualifications and Carrier's minimum driver qualification standards. As part of the driver qualification process, Contractor, and Contractor's drivers, shall authorize Carrier to access applicable driver files. Driver Safety Measurement System ("DSMS") safety scores, and any other driver data or information available as part of DOT's CSA Driver Information Resource System ("DIRS"). The parties agree that Carrier shall have the right to disqualify any driver provided by Contractor in the event that the driver is found to be unsafe, unqualified, unfit, uninsurable, or marginal, pursuant to federal or state law or the criteria established by the DOT's CSA DIRS, in violation of Carrier's minimum qualification standards, or in violation of any policies of Carrier's customers. Drivers with a recent history of accidents, traffic convictions and/or serious traffic offenses will not meet Carrier's minimum qualification standards. Upon a driver's disqualification by Carrier, Contractor shall be obligated to furnish another competent, reliable and qualified professional driver that meets the minimum qualification standards established by Carrier.

D. Benefits and Tax Withholding. Contractor assumes sole responsibility for the payment of Contractor Representatives, including wages, benefits and expenses of its employees, if any, and for all state and federal income tax withholdings, unemployment, social security taxes and disability and workers' compensation insurance as to all persons employed by Contractor in the performance of Services under this Agreement. Contractor shall timely file all federal, state, provincial and local income, social security withholding unemployment, federal highway use and other required tax forms and returns which Contractor may be required to file by law, on account of itself and any Contractor Representative. Contractor shall pay when due, all taxes and contributions reported in such forms and returns. Carrier is not authorized to and shall not withhold state, federal, or local income taxes, social security taxes, unemployment insurance taxes or any other local, state or federal tax on behalf of Contractor or any Contractor Representative.

E. Computer/Satellite Communicating Device. Contractor shall provide Vehicle with a computer/satellite communicating device that is compatible with the system utilized by Carrier. If Contractor wishes to utilize a device provided by Carrier, Contractor shall be responsible for presentation of the tractor to an approved facility for installing and, when necessary, removing a computer/satellite communicating device for each tractor leased to Carrier. Upon termination of this Agreement, Contractor shall, at its sole cost and expense, be responsible for the return, within 24 hours of the termination of this Agreement, of each Carrier-provided computer/satellite communicating device to Carrier at Contractor's assigned Carrier terminal or to such other location as authorized and directed by Carrier. If the device is not returned to Carrier within 24 hours after the termination of this Agreement, or is lost or damaged at anytime within the term of this Agreement or subsequent thereto, Contractor agrees to pay Carrier the sum of Three Hundred & Ninety Five and 00/100 Dollars ($395.00) as reimbursement for the device, and Carrier is hereby authorized to charge back against Contractor's future settlements and any Contractor escrow fund the said reimbursement cost. As an alternative to obtaining the device and service from Carrier, Contractor may obtain its own satellite communicating device, provided such device is compatible with Carrier's computer/satellite communicating system.

**2 of 18**

Carrier

Contractor

**6. OPERATIONS.**

**A. Lease and Condition of Vehicles.** For the duration of this Agreement, Contractor shall lease to Carrier the vehicle(s) specifically described in Exhibit A (see "Receipt for Possession of Vehicle"), by reference made a part hereof. From time to time Contractor may add or remove a particular Vehicle under this Agreement and the receipt of each such addition or removal shall be made on a separate Exhibit A. Notwithstanding the foregoing, the lease by Carrier of a Vehicle will not commence until the Vehicle has passed all of Carrier's required inspections and has been placarded. Contractor certifies that each Vehicle does and will continue to meet all industry and regulatory standards and is and will continue to be in good working condition and properly licensed to perform the functions contemplated by this Agreement.

**B. Safety Compliance.** Contractor acknowledges that minimum carrier safety compliance standards and requirements may differ from one jurisdiction to another. Contractor agrees to operate the Vehicle in a safe and prudent manner at all times in accordance with the laws and regulations of the jurisdictions in which it operates and pursuant to the operating authorities of Carrier and in accordance with the rules relating to traffic safety, highway protection, and cargo securement requirements. In addition, Contractor agrees to abide by Carrier's safety rules as documented from time to time in the Carrier Safety Rules, attached as Exhibit D and by reference made a part hereof. Carrier agrees to provide Contractor with, and Contractor agrees to comply with, updates to Exhibit D as they occur. When providing service hereunder, Contractor will have an approved and working wireless communication device and will provide Carrier with the phone number.

**C. Periodic Inspections and Maintenance of Vehicle.** Contractor agrees to maintain the Vehicle at Contractor' expense, in accordance with the safety and equipment standards specified by ALL applicable laws. Contractor will, at its expense, make the Vehicle available for initial inspection by Carrier at a place designated by Carrier. Thereafter, as required by applicable law, Contractor will make Vehicle available for inspection by Carrier at least once every one hundred and eighty (180) days. For Chicago, Illinois and all California locations, inspections are required at least once every ninety (90) days. Provided that such inspection is done every 180 days (or 90 for Chicago, Illinois and all California locations) at a place designated by Carrier and the Vehicle passes such inspection, then Carrier will pay for such inspection. If the Vehicle is not inspected every 180 days (90 for Chicago, Illinois and California locations), Carrier will place the Vehicle out-of-service until the required inspection is completed. If an inspection reveals that the Vehicle does not comply with applicable law, the Vehicle must be made to comply with such requirements by Contractor, at its expense and within fifteen (15) days. Contractor shall, at its expense, maintain records of inspection, repair and maintenance of the Vehicle in accordance with the Federal Motor Carrier Safety regulations and must maintain them for the duration of this Agreement and for six (6) months thereafter. Contractor shall, as directed by Carrier, forward all maintenance records covering the Vehicle as required by law. In the event any state or local law requires inspections on a more frequent basis, Contractor agrees to make the Vehicle available on that more frequent basis and all other provisions of this section shall apply on that more frequent basis.

**D. Safety Inspection.** Although Contractor is an independent Contractor and not an employee of Carrier, Carrier retains a regulatory obligation under 49 CFR Part 391 to ensure that the operator of the Vehicle is safe, properly qualified and in compliance with the Federal Motor Carrier Safety regulations. In order for Carrier to meet its obligations under federal law, Contractor agrees to make itself and its Contractor Representatives available for periodic safety inspections and safety meetings at a place designated by Carrier.

**E. Signature on Delivery Receipt.** It is Contractor's duty to obtain customer signatures on delivery receipts for trailers and containers delivered to Carrier's customers.

**F. Passengers.** 49 CFR 392.60 prohibits drivers from transporting any person in a commercial motor vehicle without Carrier's specific written authority. Accordingly, Contractor agrees not to carry any passengers in the Vehicle without prior written permission from Carrier.

**G. Accidents.** In the event of an accident, Contractor shall immediately notify appropriate public safety agencies and then notify Carrier by telephone, and require that it's Contractor Representatives do so, prior to removing the Vehicle from the scene of the accident, and complete and submit a written accident report to Carrier, and require that its Contractor's Representatives do so, as soon as possible after occurrence. Contractor and its drivers shall cooperate fully with Carrier with respect to any legal action, regulatory hearing or other similar proceeding arising from the operation of the Vehicle, the relationship created by this Agreement or the Services performed hereunder. Contractor shall, upon Carrier's request and at Contractor's sole expense, provide written reports or affidavits, attend hearings and trials and assist in securing evidence or obtaining the attendance of witnesses. Contractor shall provide Carrier with any assistance as may be necessary for Carrier or Carrier's representatives or insurers to investigate, settle or litigate any accident, claim or potential claim by or against Carrier.

**090345**

3 of 18



Carrier

RJ
Contractor

WHITE COPY – Carrier SAFETY          PINK COPY–Contractor          YELLOW COPY–TRACTOR

OCT 1 1 2013

H. <u>CSA Compliance</u>. Beginning on the date the FMCSA makes its CSA Program effective as to Carrier's and Contractor's operations under this Agreement, Contractor shall ensure that Contractor, and any drivers of Contractor, and Contractor's Vehicle shall at all times meet CSA safety standards sufficient to enable Carrier to (a) achieve and maintain a "fit" or similar rating that enables Carrier to operate without FMCSA intervention or restriction pertaining to driver, equipment, and other CSA performance measures; (b) obtain insurance coverage without increased costs associated with driver, equipment, or other performance measures under CSA; and (c) be and remain competitive with similarly situated carriers with regard to safety performance measures under CSA. Contractor further agrees to notify Carrier in writing within two (2) business days of receiving notification from the FMCSA that Contractor or any of its drivers have been deemed "unfit" or "marginal" based on their safety and compliance performance.

I. <u>Contractor's Responsibility for Operating Costs</u>. Except as otherwise provided in this Agreement, Contractor is responsible for all costs and expenses incident to its Contractor Representatives and Vehicle operations in performing this Agreement. In the event Carrier is called upon to pay any of these operational expenses, Carrier will be entitled to seek reimbursement from Contractor or to charge back such payments in accordance with Section 7. Except as otherwise provided herein, operating costs include but are not limited to the following:

1) All fuel, oil, tires and all equipment accessories and devices used in connection with the operation of the Vehicle;

2) All inspection costs, unless otherwise payable by Carrier pursuant to Section 6(C) and Vehicle maintenance costs including all cleaning, towing and repair;

3) All Vehicle purchasing or financing expenses;

4) All taxes and assessments, insurance costs and other payments due by reason of the payment by Contractor of wages or other earnings to its Contractor Representatives;

5) All mobile communications equipment and service costs;

6) Lost or misplaced permits of all types (except as otherwise specified in writing);

7) Base plates, including apportioned or prorated base plates, detention, accessorial charges, licenses and all tax payments or fees with respect to the Vehicle or the use or operation thereof including property or mileage taxes, tolls, ferries;

8) All empty mileage, expenses incurred to transfer any shipment and/or secure additional equipment to complete delivery in case of breakdown, delay, or accident, including towing, additional service related charges, and environmental clean up;

9) Freight charges that Carrier cannot collect from customers because Contractor or Contractor Representative failed to provide the necessary documentation or for any other breach of the Agreement by Contractor;

10) Fines for parking, moving violations or Vehicle violations; and

11) Insurance deductibles, costs that exceed insurance coverage or are not covered by insurance.

J. <u>Fines and Citations</u>. Carrier shall have no obligation or responsibility to Contractor for any fine, citation, cost or expense incurred by Contractor or Contractor's Representative by reason of Contractor's failure to have proper markings on its Vehicle, failure to follow Carrier's then-current published Citations/Fines Policies and Procedures guidelines, or by reason of any violation of any federal, state, or local law, regulation or ordinance resulting from acts or omission of Contractor or any Contractor Representative. Contractor shall promptly reimburse Carrier for any fine, cost or expense for which Contractor is responsible hereunder. Carrier shall be responsible for fines for overweight and oversized trailers when trailers are pre-loaded, sealed, or the load is containerized, and for improperly permitted oversized loads, unless the violation results from an act or omission of the Contractor or Contractor's Representative. Failure to alleviate the overweight condition when possible, travel on non-designated highways, and travel on restricted routes is considered such act or omission of Contractor under this Agreement.

K. <u>Amounts Collected held in Trust</u>. Any amounts, regardless of form, collected by Contractor or Contractor Representatives from Carrier customers on account of bills rendered by Carrier shall be held by Contractor as a trustee for



Carrier          Contractor

WHITE COPY – Carrier SAFETY          PINK COPY-Contractor          YELLOW COPY-TRACTOR

Carrier, and shall be delivered to Carrier as promptly as possible, and shall not be commingled with Contractor's or Contractor Representative's funds.  Contractor and/or Contractor's Representatives shall not accept cash from Carrier customers without the express prior written consent of Carrier.

L.  Copy of Agreement to be kept in Vehicle. Contractor shall carry a true and correct copy of this Agreement or a Certificate of Lease supplied by Carrier in the Vehicle at all times during the term of this Agreement and shall instruct each Contractor Representative used by Contractor of this continuing requirement.

M. Failure to Complete Service. If for any reason Contractor fails to complete transportation of commodities in transit, or abandons a shipment or otherwise subjects Carrier to liabilities from Carrier's customers, or governmental or other regulatory agencies on account of acts or omissions of Contractor or Contractor Representatives enroute, Contractor shall be placed out-of-service.  Furthermore, Contractor hereby authorizes Carrier to complete performance using the Vehicle or otherwise, and agrees to reimburse Carrier for any damages or injury it may sustain as a result of such failure to complete the contracted transportation.

## 7. RATE SCHEDULE/COMPENSATION.

A.  Rate. For each trip made by Contractor under the terms of this Agreement, Carrier agrees to pay Contractor according to the terms of the Rate Schedule set forth in Exhibit B of this Agreement and by reference made a part hereof, which may be modified from time to time by written agreement of the parties.  This amount shall constitute full payment to Contractor, including all payments for pick-up, delivery, transportation between points of origin and destination and all loading and unloading.  All mileage computations shall be based on the most recent edition of Carrier's Mileage Guide.

B.  Payment Terms. Carrier shall settle with Contractor for each trip within fifteen (15) days after Contractor's submission, in proper form, of those documents necessary for Carrier to secure payment from the shipper.

C.  Documentation for Payment. Contractor shall submit the originals of all documents necessary to secure payment including all delivery receipts, bills of lading, or other proof of delivery acceptable by Carrier.

D.  Charge Backs.  Contractor authorizes Carrier to charge back amounts due Carrier from the gross compensation otherwise payable to Contractor at settlement.  The amount of each item to be charged back to Contractor shall be computed based on the actual cost or expense incurred by Carrier and any administrative fee or mark-up disclosed in this Agreement or any addendum thereto.  Carrier shall provide Contractor written itemization and documentation of all charge backs where such documentation is necessary to verify the validity of the charge.  Charge backs may include but are not limited to the following:

1) Cargo or Equipment (as defined in Section 13) loss or damage occurring while in the possession or control of Contractor or any Contractor Representative, up to the limits established in this Agreement;

2) Citations, fines, costs and expenses arising out of acts or omissions of Contractor or any Contractor Representative that are assessed against Carrier, including but not limited to, transloading fees, towing charges, any amount Carrier is required to pay due to the Contractor's failure to balance fuel purchases in each State or the failure to provide original fuel tickets;

3) Any taxes or other amounts paid by Carrier for which Contractor is responsible under this Agreement, including but not limited to operating costs set forth in Section 6(I) or permitting fees for Vehicle permits not returned to Carrier in the event of termination of Contractor's agreement with Carrier;

4) Any amounts due under Section 11 for indemnification;

5) Any amounts due for insurance coverage that Contractor has elected to obtain through Carrier;

6) Any applicable interest, penalties, court or collection costs, administrative expenses and attorney's fees and costs associated with Contractor's failure to timely pay any amounts for which it is responsible hereunder;

7) Any amount to be periodically deducted from compensation and credited to the escrow account established under this Agreement;

090345          5 of 18



Carrier          Contractor

OCT 1 1 2013

8) Legally mandated levies and garnishments;

9) Adjustments for overpayments;

10) Charges for Carrier sponsored elective programs which Contractor elects to participate in;

11) Charges made to Contractor assigned fuel cards;

12) Contractor's Comdata fuel card transaction fees initially charged to Carrier;

13) Vehicle inspection fee of $55 for any failed vehicle inspection performed on the Vehicle; and

14) Following a failed vehicle inspection, the cost of any follow up inspection required by Carrier and performed on the Vehicle.

E. **Payment Disputes.** Contractor must submit a written request for review of any payment dispute within 90 days of settlement. Carrier shall review any alleged discrepancies in such settlement and shall make adjustment, if necessary. If a written request is not submitted within 90 days from the date of settlement, all claims for payment are waived by Contractor.

F. **Right to Examine Tariff and Freight Bills.** Upon request, Carrier shall permit Contractor to examine Carrier's tariffs or other documents from which rates and charges are computed; provided however, that Carrier shall disclose only those portions of a contract containing the same information that would appear on a rated freight bill and that Carrier may delete the names of the shippers and consignees shown on the freight bill or other form of documentation.

G. **Miscellaneous.** Carrier shall have the right, but not as a condition of settlement and payment, to review all of Contractor's documents and records relating to the use of the Vehicle and the Services provided under this Agreement and Contractor agrees to provide Carrier with access to such documents and records upon reasonable notice. With respect to final settlement upon termination of this Agreement, the failure on the part of Contractor to remove and return to Carrier all identification devices of Carrier or a letter certifying their removal shall entitle Carrier to withhold any payments owed to Contractor until such obligation is met.

### 8. ESCROW FUND.

A. **Mandatory Escrow Fund.** Contractor agrees that upon execution of this Agreement, Contractor shall deposit with Carrier and shall maintain at all times during the term of this Agreement, an escrow fund equal to One Thousand Five Hundred Dollars ($1,500.00) for the first Vehicle identified in Exhibit A plus Three Hundred Dollars ($300.00) per additional Vehicle (the "Escrow Amount"). Carrier shall hold the Escrow Amount in an interest bearing account (the "Mandatory Escrow Fund"). Contractor shall maintain the Mandatory Escrow Fund to guarantee its performance of all conditions and covenants under this Agreement. If Contractor is unable to establish the Mandatory Escrow Fund in full upon execution of this Agreement, Carrier shall, pursuant to this Section 8, deduct Fifty Dollars ($50.00) for each Vehicle identified on each Exhibit A, from each periodic settlement until such time as the balance of the Mandatory Escrow Fund is equal to the Escrow Amount.

B. **Interest on Escrow Fund.** Carrier shall pay interest on the Mandatory Escrow Fund on at least a quarterly basis either to Contractor or a Voluntary Escrow Fund established by Contractor pursuant to Section 8(F). The interest rate shall be at least equal to the average yield or equivalent coupon issued yield on 91-day, 13-week Treasury bills as established in the weekly auction held by the Department of the Treasury.

C. **Deductions from Escrow Fund.** Carrier may deduct from the Escrow Fund amounts for which any deductions may be made under this Agreement, including but not limited to those set forth in Sections 7(D), 9(B) and 11.

The Escrow Fund may at any time be replaced by Carrier to all adjustments in Contractor's compensation as set forth in this Agreement to the extent that the amounts owed by Contractor for such items exceed the Contractor's earned and payable compensation amount at the time of any settlement or final accounting.

D. **Accounting.** Notwithstanding the fact that Contractor may demand to have an accounting of transactions involving the Escrow Fund at any time, Carrier shall provide an accounting to Contractor of transactions involving the Escrow Fund either by individual settlement sheets showing the amount and description of any deduction or addition made to the Escrow



Carrier          Contractor

■ 1 3 2 8 9 - 3 1 9 3 - 0 0 0 0 2 5 ■

Fund or by a separate accounting provided to Contractor on a monthly basis showing any transaction involving the Escrow Fund.

E. Final Settlement. Upon termination of this Agreement, Carrier will return the Escrow Fund, if any, net of applicable deductions, to Contractor no later than forty-five (45) days after the date of Agreement termination. At final settlement, Carrier shall provide a final accounting to Contractor of all deductions made. Contractor will notify Carrier of any dispute about the final settlement within 1 year of termination of this Agreement or nine (9) months of the date of the final settlement payment, whichever is earlier.

F. Voluntary Escrow Fund. Upon Carrier's approval, Contractor may authorize additional funds be held in a second escrow ("Voluntary Escrow Fund") for its use, in addition to and separate from the Mandatory Escrow Fund described in Section 8 A. The Voluntary Escrow Fund will be governed by all of the provisions set forth in Sections 8(A)-(F), by substituting "Voluntary Escrow Fund" for "Mandatory Escrow Fund." Contractor agrees and understands that Carrier may draw against the Voluntary Escrow Fund to satisfy amounts owed per Section 8(C) above. Carrier shall make an annual distribution from the Voluntary Escrow Fund to Contractor at a mutually agreed upon time.

G. Mandatory Plate Tax Escrow. For Illinois Contractors only, there shall be a Mandatory Plate Tax Escrow for payment of Illinois plate taxes. Contractor hereby authorizes, in addition to any amounts withheld pursuant to Sections 8(A)-(F) above, a withholding of Seventy Five Dollars ($75.00) per settlement period. The Mandatory Plate Tax Escrow will be governed by all of the provisions set forth in Section 8(A)-(F) by substituting "Mandatory Plate Tax Escrow" for "Mandatory Escrow Fund" and $75.00 where necessary. Contractor agrees and understands that Carrier may draw against the Mandatory Plate Tax Escrow to satisfy any amounts owed per Section 8(C) above. The Contractor's Mandatory Plate Tax Escrow balance shall be released to Contractor prior to payment of Illinois plate taxes on an annual basis.

## 9. ITEMS SUPPLIED BY CARRIER.

A. Permits. Carrier shall furnish all Vehicle permits, road permits and fuel permits, while the Vehicle is in Carrier's service. Upon termination of this Agreement, Contractor shall promptly return all Vehicle permits, road permits and fuel permits to Carrier. Failure to return these permits timely shall result in Contractor paying Carrier for the unused portion of these fees already paid by Carrier, prorated on a monthly basis.

B. Placards. Carrier shall provide and Contractor shall cause to be displayed all identification required by any governmental agencies to be affixed to Vehicle, and shall be removed and returned to Carrier immediately upon termination of this Agreement. Contractor acknowledges that its utilization of such identification subsequent to the termination of this Agreement may cause irreparable damage to Carrier and therefore, authorizes Carrier to take such action as is reasonably necessary to prevent unauthorized use of identification. Contractor shall reimburse Carrier for any costs and expenses, including attorney's fees and court costs, reasonably incurred to prevent Contractor's unauthorized use of Carrier identification. In the event Contractor fails to return such identification at the termination of this Agreement, Contractor authorizes Carrier to withhold Contractor's final settlement.

## 10. INSURANCE.

A. Carrier's Insurance Obligations. As and to the extent required by law or governmental regulation, Carrier shall maintain Liability Insurance coverage for the protection of the public as related to Services provided under this Agreement.

B. Contractor's Obligation to Obtain/Maintain Insurance. As a condition of doing business with Carrier, Contractor, at its sole cost and expense, shall purchase and maintain current during the term of this Agreement insurance of the type and in the amounts as may be required from time to time by Carrier pursuant to the terms of this Agreement. Contractor need not purchase any such insurance from or facilitated by Carrier. Contractor understands and agrees that Carrier shall not have any responsibility to maintain any insurance coverage whatsoever for the benefit of the Vehicle, Equipment, or Contractor's drivers or other Contractor Representatives engaged by Contractor to perform Services hereunder.

C. Evidence of Insurance. Contractor shall provide Carrier evidence of such insurance coverage by delivering to Carrier, before Contractor commences service hereunder, certificates of insurance naming Carrier as a certificate holder and additional insured in a form acceptable to Carrier on all classes of insurances required. Each insurance certificate shall specify the name of the insurance carrier, the policy number, and the expiration date; list Carrier as an additional insured with primary coverage; and show that written notice of cancellation or modification of the policy shall be given to Carrier at least thirty (30) days prior to such cancellation or modification. Upon Carrier's request, Contractor will provide true and correct copies of the insurance policies set forth below. Such insurance coverage shall be affected by valid and enforceable

## 090345

**7 of 18**



Carrier

Contractor

OCT 1 1 2013

policies issued by reputable and financially responsible insurance companies. During the term of this Agreement, the insurance policies required will (i) contain waivers by the Insurers of all rights of subrogation against Carrier, (ii) cover all drivers, Vehicles and Equipment used in providing transportation services under this Agreement, and (iii) not contain an exclusion for the commodity hauled, unattended equipment or cargo, or railroad related operations.

D. Required Coverage.

1)  Contractor must obtain and maintain Non-Trucking Liability Insurance ("NTL") during the term of your Agreement with minimum coverage limits of $100,000 bodily injury per person, $500,000 bodily injury per occurrence and $150,000 property damage per occurrence. Such NTL shall also provide coverage no less comprehensive, with exclusions limiting coverage that are no greater than the NTL facilitated by Carrier. If this required insurance Contractor has obtained is not the insurance facilitated by Carrier, Contractor must provide Carrier with a Certificate of Insurance naming CSX Intermodal Terminals, Inc. as a certificate holder and additional insured and provide a copy of the policy. This coverage must be a valid and enforceable policy issued by a reputable and financially responsible insurance company. Carrier reserves the right to reject any insurance presented that it, in its sole discretion, does not deem financially sound and reputable.

The coverage cannot contain an exclusion that would limit the coverage in the following situations:

*   Accident occurring when owner/operator drives to and from the originating terminal,
*   Accident which occurs when owner/operator is on his way back to the originating terminal for the sole purpose of parking his Tractor and ending his workday.

2)  Contractor shall, to the extent required or permitted by law, provide workers' compensation insurance coverage (or, if Contractor prefers, occupational accident insurance coverage where both state law allows and Carrier approves) for Contractor (if a natural person) and those of its drivers, employees, agents, and any other persons required to be principally covered under the worker's compensation law of the State in which Contractor is domiciled and in amounts not less than the statutory limits required by such State's law. The workers' compensation insurance policy shall provide principal coverage in the State of Florida as well as the State in which Contractor is domiciled; shall provide "other states coverage" that excludes only the "monopolistic states" -- namely, North Dakota, Ohio, Washington, and Wyoming; and shall provide, if available, Extended Protection to cover Contractor and Carrier for any claim or expenses incurred as a result of a claim made by Contractor, its drivers, employees, agents, and other persons utilized by Contractor in any of the monopolistic states. If Contractor is domiciled in any of the four foregoing states, Contractor shall have state-fund coverage. As evidence of such coverage, Contractor shall provide Carrier with a copy of the insurance policy declarations page for Carrier's verification before operating the Vehicle under this Agreement (or other document issued by the appropriate state fund including, where applicable, current certificates of premium payment).

3)  Contractor may, as an alternative to obtaining workers' compensation coverage, obtain an occupational accident insurance policy that includes either an endorsement or a separate policy provision whereby an admitted insurer provides, or agrees to provide, workers' compensation coverage that becomes effective for a claim by Contractor alleging employee status, but Contractor may elect this alternative ONLY IF:

a.  Contractor either --

i.  Is the sole owner, and the sole and exclusive operator, of the Vehicle, or

ii.  Has workers and the State in which Contractor is domiciled both exempts Contractor from maintaining workers' compensation coverage of Contractor (if a natural person) and Contractor's employees and protects Carrier from being considered the employer of either Contractor or Contractor's workers;

b.  The state in which the work is principally localized is not Colorado or North Carolina;

c.  The occupational accident insurance coverage is no less comprehensive than the coverage Carrier may facilitate on Contractor's behalf if Contractor so chooses, as provided in the "CERTIFICATE OF INSURANCE/SCHEDULE OF INSURANCE DEDUCTIONS" attached as Schedule 1; and

d.  Carrier approves the coverage.

8 of 18

Carrier

Contractor

4) Certain Kansas-, Utah- or Mississippi-Domiciled Contractors.  If domiciled in Kansas, Utah or Mississippi, Contractor must provide evidence of:

    a.    Either workers' compensation insurance coverage or occupational accident insurance coverage if Contractor is the sole owner/exclusive driver of the Vehicle; or

    b.    Workers' compensation insurance coverage if Contractor is not the sole owner/exclusive driver of the Vehicle.

E. **Contractor's Liability If Required Coverage Are Not Maintained.**  In addition to Contractor's hold harmless/indemnity obligations to Carrier under the Agreement, Contractor agrees to defend, indemnify, and hold Carrier harmless from any direct, indirect, or consequential loss, damage, fine, expense, including reasonable attorney fees, actions, claim for injury to persons, including death, and damage to property that Carrier may incur arising out of or in connection with Contractor's failure to maintain the insurance coverage required by this Agreement.  In addition, Contractor, on behalf of its insurer, expressly waives all subrogation rights against Carrier, and, in the event of a subrogation action brought by Contractor's insurer, Contractor agrees to defend, indemnify, and hold Carrier harmless from such claim.

F. **Availability of Coverage and Claims Administration from Carrier upon Election.**  Contractor shall not be required to obtain insurance coverage or claims administration from or facilitated by Carrier nor is Carrier required to obtain or pay for insurance coverage or to provide claims administration for Contractor or any Contractor Representative.  However, from time to time, Carrier may, pursuant to the regulations, choose to make available to its independent contractors the various insurance coverage above described and will advise its independent contractors of the availability and cost and (if applicable) any administrative charge to be assessed by Carrier so that each Contractor can voluntarily choose whether or not to avail itself of the coverage.  When available, Carrier shall, upon receipt of a written request from Contractor, permit Contractor to participate in the then available coverage(s), in lieu of maintaining Contractor's own, separately contracted coverage.  From time to time, Carrier may choose to exclusively perform the following services with regard to each incident occurring in connection with the Services performed under this Agreement:  processing and investigation of claims, providing and implementing all safety programs, handling and bearing all maintenance and repair claims by Equipment providers, and otherwise administering all such claims and losses (other than personal injuries to Contractor or Contractor Representative).  Exhibit C and the associated Schedule 1 set forth the coverage currently available to Contractor from or facilitated by Carrier and the cost and certain other terms and conditions applicable to such insurance coverage.

G. **Termination of Agreement Terminates Coverage.**  Termination of this Agreement by either party automatically cancels insurance provided through Carrier to Contractor.

11. **INDEMNIFICATION.**  Contractor shall release, indemnify and hold harmless Carrier from and against any and all loss, cost or expense, including without limitation reasonable attorney fees, in connection with any claim, action, investigation, proceeding, or lawsuit, whether actual or threatened, arising out of any of the following:

    a)    **Injury or death to any person to the extent said injury or death is caused by simple negligence of Contractor (determined at Carrier's sole discretion), Contractor's Representatives, Contractor's employees, subcontractors or agents, or by Contractor or Contractor Representative's breach of its obligation under this Agreement, provided however, that Contractor's liability under this subsection shall be limited to a separate $1,000.00 deductible for property damage, $1,000.00 deductible for personal injury and $1,000.00 deductible for cargo loss or damage per occurrence which will be deducted from Contractor's settlement.  This limitation shall not apply if injury or death is caused by the gross negligence, willful or intentional misconduct of Contractor, its Contractor Representatives, subcontractors or agents;**

    b)    Acts of misrepresentation, fraud, theft or embezzlement by Contractor or any Contractor Representative;

    c)    Loss of, damage to or theft of any Equipment or cargo while in possession or control of Contractor, subject to the limits established pursuant to this Agreement;

    d)    Failure of Contractor or any Contractor Representative to comply with the requirements of any governmental entity having jurisdiction over Contractor's operations, including the Services performed under this Agreement;

Carrier

Contractor

OCT 1 1 2013

70345

e) Loss, damage or liability, including reasonable attorney fees, resulting from any claim of Contractor or any Contractor Representative, under any industrial accident laws, workers' compensation laws or any other state or federal laws applicable to employees or employers;

f) Uncollectible invoices for line haul, assessorial or other charges due to Contractor's failure to provide required documents including proofs of delivery, bills of lading and interchanges;

g) The issuance of any false or fraudulent bill of lading or delivery order, or the giving or receiving of any false or fraudulent proof of delivery for any cargo or for transportation charges;

h) Loss, cost or liability resulting from Contractor's failure to maintain the insurance coverage required under this Agreement or to provide funds in satisfaction of any insurance deductible amount; or

i) Loss, damage or liability resulting from Contractor's failure to return or remove any identification devices after termination of this Agreement.

Contractor acknowledges that as an independent Contractor, Contractor, it's Contractor Representatives, agents and servants are not covered by any workers' compensation insurance of Carrier and agrees not to pursue any claim under industrial accident laws, workers' compensation laws or any other state or federal law applicable to employees and employers. Contractor is solely responsible for any claim under said industrial accident laws, workers' compensation laws or any other state or federal law applicable to employees and employers.

## 12. CARGO LOSS AND DAMAGE LIABILITY.

A. Notice of Losses, Damage, Overages and Shortages. Contractor and Contractor Representatives shall exercise reasonable care to protect the loss or damage to cargo and Equipment it possesses in performing Services pursuant to this Agreement. Contractor and Contractor Representatives shall notify Carrier and obtain authorization prior to signing any delivery receipts or similar documents or making notations acknowledging any losses, overages, shortages or damages to cargo and shall only make such notations in accordance with the instructions given by Carrier and shall include the date and time Carrier was contacted and the name of Carrier personnel giving instructions and the name of driver or other Contractor Representative receiving such instructions. Contractor agrees to reimburse Carrier for any liability or loss it may sustain as a result of Contractor's failure to provide such prior notice or follow instructions given.

B. Contractor Liability: Contractor shall reimburse Carrier for losses associated with each incident of cargo shortage, loss or damage that occurs while in the possession or control of Contractor or any Contractor Representative, due to Contractor or Contractor Representative's negligence or breach of obligations under this Agreement, as determined by Carrier in its reasonable discretion. Carrier will provide Contractor with itemization of any deductions for cargo loss or damage made from compensation payable to Contractor prior to any such deduction(s).

## 13. EQUIPMENT.

A. Performance of Interchange. Contractor is familiar with the conditions and procedures imposed upon the interchange of trailers, chassis, container equipment and marine containers ("Equipment") between Carrier, railroads, steamship lines and other private Equipment providers. Contractor hereby expressly agrees to perform all such conditions and procedures properly, and according to applicable law and regulation. Contractor assumes all liability to Carrier for the proper performance of such interchange conditions and procedures. Contractor agrees to make Contractor Representatives specifically aware that Contractor Representatives must inspect the physical condition, both interior and exterior, of any Equipment interchanged on behalf or at the direction of Carrier and must note any exceptions on the interchange receipt before executing same on behalf of Carrier. If Carrier is held responsible and/or is billed for any Equipment loss or damage which Carrier cannot re-bill to the applicable railroad or steamship line or other owner of such Equipment for whom Carrier provides interchange services, Contractor shall reimburse Carrier for the entire amount.

B. Contractor Liability. Contractor agrees to return any Equipment provided for its use by Carrier in the same good condition as received by Contractor, reasonable wear and tear excepted, along with any and all other equipment and property belonging to Carrier immediately upon Carrier's request or upon termination of this Agreement. Contractor shall reimburse Carrier for any costs arising out of loss or damage to any Equipment, whether owned by Carrier or a third party, in the control and possession of Contractor, or any Contractor Representative unless Contractor can prove (through documentary evidence such as an interchange report) that the Equipment loss or damage did not occur while in the control and possession of Contractor or any Contractor Representative; shall use such Equipment only to perform services

**10 of 18**



Carrier          RJ
                 Contractor

requested by Carrier; and except or otherwise provided herein or as may be necessary to comply with laws and governmental regulations, shall make no alteration to said Equipment without Carrier's express, prior written authorization, Contractor and Contractor Representatives shall take reasonable measures to avoid further damaging tires that have gone flat. In the event the trailer is not in as good as condition as it was delivered by Carrier, Contractor hereby authorizes Carrier to restore the trailer to proper condition and to charge back to Contractor the costs of such repairs or reconditioning. In the event Contractor for any reason fails to comply with this provision and return Carrier's trailer, Contractor agrees to reimburse Carrier for all reasonable expense and costs, including attorney fees, incurred by Carrier in recovery of its trailer or property from Contractor or its drivers.  Contractor agrees that in the event it is necessary for Carrier to enter upon private property or remove private property in order to recover its trailer and property, Contractor does hereby irrevocably grant Carrier or its duly authorized agents, permission to do so and further agrees to indemnify and hold harmless Carrier, and its duly authorized agents, from any form of liability whatsoever in connection with such repossession. Contractor shall be liable for, and pay, the entire amount for each incident involving direct, indirect and consequential damage, including but not limited to, towing charges, replacement costs for a total loss, arising out of, or in connection with, Contractor's use of Carrier's trailers, Carrier's customer's trailers, other Carrier equipment, or equipment of any other carrier. Carrier will provide Contractor with itemization of any deductions for Equipment loss or damage made from compensation payable to Contractor.

**14. TERMINATION OF AGREEMENT.** Either party may terminate this Agreement upon no less than 15 days written notice sent by certified mail to the last known address of the other party.

A. <u>Contractor's Requirements Upon Termination of Agreement.</u> Upon termination of the Agreement, Contractor will sign the Vehicle Receipt Exhibit A to evidence return of the Vehicle and the end of the Vehicle lease.  If the Contractor fails to so sign the Vehicle Receipt, this Agreement shall nevertheless terminate in accordance with its terms.    In addition, Contractor shall promptly deliver to Carrier:

1) all bills of lading and other documents involved in Contractor's transportation of commodities under this Agreement;

2) all forms, reports, advertising materials, and literature obtained by Contractor through or from Carrier;

3) licenses, identifying insignia or placards or documents obtained by or on behalf of Carrier in furtherance of operation of Contractors Vehicle pursuant to this Agreement; and

4) documents and papers, properly executed, which may be required to effect a transfer of, or to secure a refund for, such licenses and insignia, and upon failure or refusal of Contractor to cooperate promptly with Carrier to effect such transfers or secure such refunds, Carrier may at its option charge to Contractor the amount of any refund to which Carrier might otherwise be entitled, or the cost of replacing such items for their unexpired terms.

B. <u>Final Settlement.</u> Upon termination of the Agreement Carrier shall prepare for final settlement as required by applicable regulations and Section 7(G).

**15. EQUAL CONTRACTING AND EMPLOYMENT OPPORTUNITY.** The Services and Vehicle specified herein will be furnished by Contractor in full compliance with all applicable federal, state and local laws and regulations pertaining to government contracts and subcontracts, including, without limitation, Executive Order 11246.

**16. CONFIDENTIALITY.**  In the course of operating under this Agreement, Carrier will disclose to Contractor information regarding Carrier and its customers that are considered by Carrier to be proprietary or confidential to Carrier and are otherwise not disclosed to others not engaged by Carrier.  Such information will include but is not limited to data and manifest records, bill of lading information, shipping instructions, names of customers and their employees, consignees and consignors, commodity descriptions and rates and charges.  Contractor agrees to maintain such information in confidence, not to disclose such information to any third parties, restrict disclosure to those Contractor Representatives with a need to know and bind such parties to these confidentiality restrictions and not to utilize any information gained from Carrier in any manner against the interests of Carrier or its customer.  This section will not prohibit or limit Contractor's use of information (i) previously known to it and not subject to any confidentiality restrictions; (ii) acquired by it from a third party which is not, to Contractor's knowledge, under an obligation not to disclose such information; or (iii) which is or becomes publicly available through no breach by Contractor or Contractor Representatives of these confidentiality obligations.  Contractor acknowledges the value of the information, agrees that, Carrier will be entitled to seek an injunction against a breach of this Section from any court of competent jurisdiction immediately upon request.

Carrier

Contractor

WHITE COPY – Carrier SAFETY      PINK COPY-Contractor        YELLOW COPY-TRACTOR

OCT 1 1 2013

090345

Contractor consents to the imposition of such equitable relief, and waives any requirement that Carrier posts a bond or other security or proves that monetary damages are inadequate.

**17. NO ASSIGNMENT OF AGREEMENT.** Contractor shall not assign or otherwise transfer this Agreement or an interest therein without the prior written consent of Carrier, which such consent will not be unreasonably withheld. Any purported assignment without proper consent shall be null and void. This agreement shall be binding on and inure to the benefit of the heirs, successors and assignees of the parties.

**18. ENTIRE AGREEMENT/ REVOCATION OF PRIOR AGREEMENTS.** This Agreement, including all exhibits, and appendices attached hereto, which are hereby incorporated by reference herein and made a part hereof, constitutes the entire Agreement and understanding between the parties and shall not be modified, altered, changed or amended in any respect unless in writing and signed by both parties. This Agreement supersedes, replaces and takes precedence over any prior agreement of the parties regarding the same or similar matter.

**19. WAIVER.** A waiver by either party at any time of any of the terms, conditions, or covenant of this Agreement, or of any default or breach shall not be deemed or taken as a waiver at any time thereafter of the same or any other term, condition or covenant herein contained, nor of the strict and prompt performance thereof.

**20. SEVERABILITY/ CUMULATIVE REMEDIES.** In the event that any provision of this Agreement, including its attachments, is found to be unenforceable or void, the remaining provisions shall, nevertheless, be binding with the same effect as though the unenforceable provision was deleted. All rights and remedies will be cumulative, and a party's pursuit of any such right or remedy will not preclude such party from pursuing any other available right or remedy.

**21. TIME IS OF THE ESSENCE.** Time is of the essence in this Agreement, both as to the terms and Services rendered.

**22. CAPTIONS AND HEADINGS.** The captions and headings contained in this Agreement are for convenience of reference only and shall not control or affect the meaning or interpretation of the terms and provisions of this Agreement.

**23. READ AND UNDERSTOOD.** Each party acknowledges that it has read and understands this Agreement, has had an opportunity to present the Agreement to its own legal counsel, and agrees to be bound by its terms.

This Agreement shall be governed by the laws of the State of Florida both as to interpretation and performance.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement this ___8th___ day of __October__ 20_13_ and it shall be considered binding upon both parties and shall remain in full force and effect unless and until cancelled according to this Agreement.

x _Richard Jimenez_
**CONTRACTOR**

_Christiana Rivera_
**CSX INTERMODAL TERMINALS, INC. (Authorized Representative)**


Carrier

x RJ
Contractor

WHITE COPY – Carrier SAFETY     PINK COPY–Contractor     YELLOW COPY–TRACTOR

**EXHIBIT A - VEHICLE RECEIPT**

**VEHICLE INFORMATION**

MAKE FreightLiner  MODEL ++  YEAR 2004

STATE PA  REGISTRATION _____

SERIAL NO. 1FUJA6AVX4Lm63839

TIRE SIZE _____ FIFTH WHEEL: FIXED [ ]
SLIDING [ ]

**RECEIPT FOR POSSESSION OF VEHICLE (SIGN-ON)**
Received from Contractor:

X  tractor.
The Vehicle described herein

Date: 10/8/13  Time: 7:45am

Place: Philadelphia, PA

CSX INTERMODAL TERMINALS, INC.

Christava Rivera.

**RECEIPT FOR RETURN OF VEHICLE (CANCELLATION)**
Received from Carrier:

_____

The Vehicle described herein

Date: _____ Time: _____

Place: _____

CONTRACTOR: _____

090345

13 of 18


Carrier

RJ
Contractor

WHITE COPY – Carrier SAFETY    PINK COPY-Contractor    YELLOW COPY-TRACTOR

OCT 1 1 2013

## EXHIBIT C - AGREEMENT AND ELECTIONS BY CONTRACTOR REGARDING INSURANCE COVERAGE

CSX Intermodal Terminals, Inc. ("Carrier") and the undersigned Contractor have entered into a Contractor Operating and Lease Agreement (the "Agreement" by which Contractor provides Services for Carrier and is responsible for providing various insurance coverage's for Contractor and Contractor Representatives. This Exhibit C is to establish the parties' obligations in connection with the Agreement concerning the existence of (1) commercial accident liability insurance, and (2) workers' compensation insurance or occupational accident insurance as applicable.

Carrier desires that Contractor, for its activities in connection with the Agreement, obtain its own insurance coverage. Notwithstanding such desire, the parties realize that Contractor may consider it more convenient, economical or efficient to have Carrier assist Contractor in the selection, acquisition and/or administration of certain insurance coverage by obtaining or allowing coverage under or through Carrier's group, fleet, or other policies. Accordingly, the parties agree that, while there is no employer-employee relationship between them, which would require Carrier to provide such Services, Contractor may for its own business reasons wish to request some or all such Services.

This Exhibit C shall not modify or alter Carrier's rights, responsibilities, and/or obligations under the Agreement in any way. The purpose of this Exhibit is to inform Contractor of the opportunity to obtain certain insurance to be purchased through Carrier by way of deductions from amounts payable to Contractor. Contractor acknowledges and agrees that it is Contactor's sole responsibility to elect to choose or not choose to sign up for the insurance that is or may become available for purchase through Carrier from time to time.

The insurance available to Contractor that may be purchased though Carrier is set forth in the attached Schedule 1. By electing (through marking the applicable section on Schedule 1) the insurance coverage(s) listed on Schedule 1, Contractor asks and consents that Carrier facilitate the procurement of such coverage on its behalf. Nothing in this authorization shall be construed as creating an employer/employee relationship. In making its election, Contractor agrees that Carrier will provide all Services in connection with claims arising out of Contractor's Services provided under the Agreement, including, but not limited to, selection of insurance carriers, negotiation of rates and terms, processing and investigation of claims, bearing all costs of deductibles and retentions in excess of the applicable deductibles set forth in Schedule 1, investigating, handling and bearing maintenance and repair claims by equipment providers and otherwise administering such claims and losses. Carrier will advance on Contractor's behalf the respective deductibles applicable to Contractor per incident and Contractor agrees to pay Carrier through settlement at the minimum rates set forth in Schedule 1.

By requesting Carrier to facilitate procurement of such coverage on its behalf, Contractor solely intends for Carrier to assist Contractor in obtaining such benefits and to recompense it for such service by way of settlement offset. Contractor authorizes Carrier to deduct from Contractor's gross settlement, in each settlement period that coverage is maintained, coverage costs identified in Schedule 1. These coverage costs and settlement deductions reflect the current costs associated with the services described in the preceding paragraph, including, but not limited to, selecting of insurance carriers, negotiating rates and terms, processing and investigating claims, bearing all costs of deductibles and retentions in excess of the applicable deductibles set forth in Schedule 1, investigation, handling and bearing maintenance and repair claims by Equipment providers and otherwise administering such claims and losses. Contractor understands that the costs for coverage assessed by Carrier against Contractor may exceed the actual costs of this insurance. Contractor understands that the insurance policies maintained by Carrier and offered to Contractor may include self-funded retentions. Carrier is responsible for paying the amount of the self-funded retentions. In the event Contractor elects to obtain coverage facilitated through Carrier, Contractor is responsible only for the deductible amount set forth in the attached Schedule 1 and the weekly deductions.

Contractor agrees to provide written notice to Carrier's fleet supervisor each and every time Contractor seeks or wishes to elect new or different coverage that may be available for purchase facilitated through Carrier. Contractor may choose at any time to obtain private insurance and terminate coverage chosen hereunder and agrees to notify Carrier of changes in coverage choices.

If Carrier is facilitating any insurance coverage for Contractor pursuant to this Agreement and the cost to Contractor for, or other details of, a coverage changes from the information listed in the attached Schedule 1, Contractor will be so notified by personal delivery, fax, or other written notice. In any event, Contractor shall not be subject to any such change until ten (10) calendar days after such notice or such later time as is set forth in the notice. Contractor's failure, by the end of ten (10) calendar days after such notice, to notify Carrier of any objection to the change shall constitute Contractor's express consent and authorization to Carrier to implement the change and modify accordingly the deductions from Contractor's settlement compensation, beginning immediately after the 10-day period. Such modified amounts shall replace and

**15 of 18**



Carrier                    Contractor

WHITE COPY – Carrier SAFETY        PINK COPY–Contractor        YELLOW COPY–TRACTOR

090345

OCT 1 1 2013

supersede those shown in Schedule 1 and Carrier shall not have an obligation to also provide a revised Certificate of Insurance. If Contractor fails to notify Carrier of any objection within the 10-day period -- or if Contractor notifies Carrier of its objection within the 10-day period and Contractor and Carrier are then unable to resolve the matter to their mutual satisfaction -- Contractor and Carrier shall each have the right to terminate this Agreement effective immediately upon the change becoming effective (although Contractor shall remain subject to the change until Contractor's termination's effective date and time).

**TERMINATION OF THE LEASE AGREEMENT BY EITHER PARTY AUTOMATICALLY CANCELS INSURANCE PROVIDED THROUGH CARRIER TO CONTRACTOR.**

Executed at _Philadelphia, PA_ on _10 8_ , 20_13_

CSX INTERMODAL TERMINALS, INC.
(CARRIER)
By: _C. Rivera_
Name:
Title: _Fleet Supervisor_
Date: _10|8|13_

_Richard Jimenez_
(CONTRACTOR)
By: _Richard Jimenez_
Name:
Title: _Contractor_
Date: _10|8|13_

**16 of 18**

